IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TZVIA WEXLER<br><br>     Plaintiff,<br><br>  v.<br><br>CHARMAINE HAWKINS and<br>JAMES KOENIG<br><br>     Defendants. | CIVIL ACTION NO. 19-5760 |

**MEMORANDUM OPINION**

Rufe, J.                                                       July 25, 2024

On January 23, 2024, after a five-day trial, the jury found Defendants Philadelphia Police Officer Charmaine Hawkins and Detective James Koenig liable for false arrest, malicious prosecution, and retaliation, and further found Officer Hawkins liable for assault and battery and excessive force.[1] As the prevailing party on claims brought under 42 U.S.C. § 1983, Plaintiff Tzvia Wexler has filed a petition for attorney's fees and costs. Defendants argue in response for a significantly lower fee award. For the reasons set forth herein, the Court will award fees and costs in the amount of $292,810.23.

**I. LEGAL STANDARD**

"The general rule in our legal system is that each party must pay its own attorney's fees and expenses, . . . but Congress enacted 42 U.S.C. § 1988 in order to ensure that federal rights are adequately enforced."[2] Section 1988 provides that a court may, in its discretion, award a reasonable attorney's fee to a prevailing party in certain civil rights actions, including those

---

[1] Verdict Form at 1–4 [Doc. No. 84]; Civil J. [Doc. No. 87].

[2] *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)).

brought under § 1983.³ "The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances."⁴

The prevailing methodology for determining a "reasonable" fee under § 1988 is the lodestar approach, as pioneered by the Court of Appeals for the Third Circuit.⁵ The analysis is two-fold. First, a district court must calculate the lodestar by multiplying the number of hours worked by the prevailing hourly rate.⁶ That initial computation "includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee'"⁷—*i.e.*, "a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case."⁸ The figure that results from applying the lodestar method "is presumptively sufficient . . . ."⁹ Second, the district court may deviate from the calculated figure, "but only in the 'rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'"¹⁰

---

³ 42 U.S.C. § 1988(b).

⁴ *Hensley*, 461 U.S. at 429 (quoting H.R. Rep. No. 94-1558, at 1 (1976)).

⁵ *See Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (1973).

⁶ *Souryavong v. Lackawanna County*, 872 F.3d 122, 128 (3d Cir. 2017) (citing *Perdue*, 559 U.S. at 546).

⁷ *Id.* (quoting *Perdue*, 559 U.S. at 543–44).

⁸ *Perdue*, 559 U.S. at 552 (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)).

⁹ *Id.* (citations omitted).

¹⁰ *Souryavong*, 872 F.3d at 128 (quoting *Perdue*, 559 U.S. at 553). The twelve relevant factors, known as the "*Johnson* factors," were laid out in a seminal decision from the Fifth Circuit. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The Third Circuit has held that the Supreme Court has "still left room for *Johnson* factors to play a role in the attorney fee award decision . . . ." *Souryavong*, 872 F.3d at 128.

The *Johnson* factors are: (1) the time and labor required to litigate the case; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717–19.

## II. DISCUSSION

Plaintiff was represented at trial by attorney Thomas Malone of the Malone Firm. Mr. Malone submitted a sworn declaration attesting to the reasonableness and necessity of the legal services rendered.[11] Attached to that declaration are timesheets which reflect the dates, hours, and descriptions of the work he performed in this case, as well as the work performed by Chris McInerney, his paralegal.[12] The total requested fee award is $313,835.22, including fees for time spent preparing the instant petition, as well as costs such as the filing fee to initiate this action, expenses arising from depositions of four witnesses, and the use of a third-party technician during the five-day jury trial. Defendants do not challenge Plaintiff's calculation of costs and expenses, which total $8,941.47.[13] The submitted evidence is sufficient for the Court to assess the reasonableness of counsel's billable rates and the hours spent working on the case.

### A. Lodestar Calculation

#### 1. Reasonable Hourly Rate

The Court calculates "a reasonable hourly rate . . . according to the prevailing market rates in the relevant community."[14] It must "assess the experience and skill of the prevailing party's attorney[ ] and compare [his] rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."[15] The attorney's billing rate may be considered, but it is not dispositive.[16] The Third Circuit has long viewed the fee schedule established by Community Legal Services, Inc. ("CLS") as "well developed" and "a

---

[11] Malone Decl. [Doc. No. 100-2].

[12] Malone Decl., Ex. A [Doc. No. 100-2] (Malone timesheets); *id.*, Ex. B (McInerney timesheet).

[13] *Id.*, Ex. C (record of costs).

[14] *Maldonado*, 256 F.3d 181, 184 (3d Cir. 2001).

[15] *Id.* (quotation marks and citation omitted).

[16] *Pub. Int. Rsch. Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995) (citations omitted).

fair reflection of the prevailing market rates in Philadelphia."[17] The CLS fee schedule has been applied in this District in civil rights cases against police officers involving claims of false arrest, excessive force, malicious prosecution, and assault and battery.[18]

Mr. Malone attests that his hourly rate is $725 per hour.[19] He states that he graduated from law school in 1994 and is in his 29th year of legal practice.[20] He represents that, throughout his time as a former prosecutor at the Philadelphia District Attorney's Office and in private practice, he has tried over 100 jury trials.[21] The operative CLS fee schedule, effective January 19, 2023, provides for an hourly rate between $735 and $850 for attorneys with more than 25 years of experience. Although Mr. Malone has not submitted comparator affidavits attesting to the hourly rates from similarly experienced attorneys practicing in this District, the Court holds that his requested rate is reasonable based on the CLS schedule.[22]

Defendants separately request that the Court apply a lower, blended hourly rate, arguing that Plaintiff's counsel performed certain tasks which do not equate to "partner level attorney work."[23] Courts in this District, in their discretion, have occasionally adopted a blended rate where certain tasks could have been delegated to associates or non-lawyers, but "doing so here would ignore the realities of practicing law as a solo practitioner or in a small firm with limited

---

[17] *Middlebrooks v. Teva Pharmaceuticals USA, Inc.*, No. 17-412, 2019 WL 936645, at *13 (E.D. Pa. Feb. 26, 2019) (quoting *Maldonado*, 256 F.3d at 187).

[18] *See Robinson v. Fetterman*, 387 F. Supp. 2d 432, 435 (E.D. Pa. 2005).

[19] Malone Decl. ¶ 16 [Doc. No. 100-2].

[20] *Id.* ¶¶ 16–17.

[21] *Id.* ¶ 17.

[22] *See Robinson*, 387 F. Supp. 2d at 435 (holding that a requested fee that was $15 *higher* than the CLS range was reasonable, because "despite defendants' views regarding the quality of plaintiff's counsel's representation, the fact remains that plaintiff's counsel has over two decades of legal experience").

[23] Def.'s Resp. Opp'n at 23 [Doc. No. 115].

resources and manpower."[24] The timesheet submitted for Mr. McInerney reflects that Mr. Malone delegated a substantial volume of non-attorney work over the course of the litigation. Defendants do not challenge Mr. McInerney's hourly rate of $125,[25] which the Court holds is a reasonable rate for his services.

Defendants do assert that nearly all of Mr. McInerney's entries are "duplicative" of Mr. Malone's entries and that Mr. Malone cannot be permitted to "double-bill."[26] However, none of Mr. Malone's entries, on their face, describe administrative or clerical work that could have been delegated to a non-lawyer, or seem to duplicate Mr. McInerney's entries. For example, Mr. Malone recorded 9.5 hours on February 16, 2021, for depositions of Mrs. Wexler and Officer Timothy O'Reilly, and Mr. McInerney recorded 3.25 hours on the same day for "[d]eposition support/prep."[27] There is nothing duplicative or unreasonable about such time entries. Defendants have not shown a basis for applying a blended rate.

   2. Hours Reasonably Expended

In addition to identifying a reasonable hourly rate, a court must also determine whether the number of hours spent on the litigation was reasonable.[28] A court "should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'"[29] Defendants raise several objections to Mr. Malone's hours.

---

[24] *Pelzer v. City of Philadelphia*, 771 F. Supp. 2d 465, 471–72 (E.D. Pa. 2011) (considering fee petition in excessive force case against individual officer).

[25] Defs.' Resp. Opp'n at 19 [Doc. No. 115].

[26] Defs.' Resp. Opp'n at 18 [Doc. No. 115].

[27] Malone Decl., Exs. A, B [Doc. No. 100-2].

[28] *Windall*, 51 F.3d at 1188 (3d Cir. 1995).

[29] *Id.* (quoting *Hensley*, 461 U.S. at 433 (1983)).

First, Defendants argue that the amount of time Mr. Malone spent preparing the Complaint was excessive because he had previously represented Mrs. Wexler in connection with her criminal case. The Court disagrees. Mr. Malone recorded a total of 16.5 hours working on the Complaint, including legal research, meetings with his client, and review of the criminal docket.[30] Preparation of the Complaint—a 27-page document asserting ten federal and state civil causes of action—clearly required factual development and legal research into issues distinct from those implicated in the criminal proceedings against Mrs. Wexler.[31] Notwithstanding Mr. Malone's prior familiarity with the criminal case, 16.5 hours is not an unreasonable or excessive amount of time to have expended in initiating this complex civil action. Defendants' objection is overruled.

Second, Defendants object to Plaintiff's counsel's hours spent reviewing Defendants' pre-trial motions in limine, which Defendants argue were resolved in their favor.[32] On December 18, 2023, Mr. Malone recorded 4.5 hours, with the description "[r]eview MiLs," and on December 19, 2023, Mr. Malone recorded 5 hours, with the description "[r]eview MiLs; work on pretrial memo."[33] Mr. McInerney separately recorded 2.25 hours on December 17, 2023, to "[r]esearch MiL issues."[34] Even setting aside that Mr. Malone's second entry was (reasonably) block-billed—including "work on pretrial memo" in addition to the motion in limine review— the 9.5 hours he spent and the 2.25 hours his paralegal spent reviewing and researching issues

---

[30] Malone Decl., Ex. A [Doc. No. 100-2].

[31] *See* Compl. [Doc. No. 1].

[32] The first of Defendants' two pre-trial motions in limine was granted as unopposed, pursuant to counsel's agreement during the December 21, 2023 final pretrial conference that Plaintiff would not call at trial the witnesses challenged in Defendants' motion. *See* Order, Dec. 21, 2023 [Doc. No. 64]. The second motion in limine was dismissed pursuant to the parties' stipulation. *See* Order, Jan. 11, 2024 [Doc. No. 76].

[33] Malone Decl., Ex. A [Doc. No. 100-2].

[34] *Id.*, Ex. B.

raised in Defendants' pre-trial motions were not unreasonable.[35] Plaintiff was the prevailing party on every one of the seven counts presented to the jury; there is no basis for denying fees based on counsel's strategic, pre-trial decisions, such as choosing not to contest motions regarding the admissibility of certain evidence or witnesses.[36] This objection is rejected.

Third, Defendants assert that the Court informed the parties during a telephone conference on August 10, 2023, that the August 21, 2023 trial date would need to be rescheduled, but Plaintiff's counsel nevertheless unreasonably billed 41.5 hours to prepare for trial between August 10 and August 14, 2023.[37] Although the Court did communicate during the August 10 telephone conference that the scheduled trial date would likely be postponed, Defendants fail to mention that, during the call, the Court made it abundantly clear that the case would need to be tried in the near future if settlement efforts were unsuccessful.[38] Indeed, four days after the conference, Defendants filed their proposed jury instructions, proposed verdict sheet, and proposed voir dire.[39] The Court also notes that, immediately after the telephone conference, a settlement conference with Magistrate Judge Carol Sandra Moore Wells was scheduled for later in August 2023.[40] It was entirely reasonable for Plaintiff's counsel to proceed with preparing for trial that month despite the schedule adjustments. The objection is overruled.

---

[35] *Id.*, Ex. A.

[36] Mr. Malone's strategic decisions in response to Defendants' pre-trial motions in limine are clearly distinguishable from, *e.g.*, counsel who bills 56 hours in connection with a frivolous and unsuccessful motion for summary judgment, in the face of obvious genuine issues of material fact. *Cf. Robinson v. Fetterman*, 387 F. Supp. 2d 432, 437 (E.D. Pa. 2005).

[37] Def.'s Resp. Opp'n at 15 [Doc. No. 115].

[38] *See* Min. Entry, Aug. 10, 2023 [Doc. No. 47].

[39] Defs.' Proposed Jury Instrs. [Doc. No. 49]; Defs.' Proposed Verdict Sheet [Doc. No. 50]; Defs.' Proposed Voir Dire [Doc. No. 51].

[40] Order, Aug. 10, 2023 [Doc. No. 46]; Min. Entries, Aug. 24, 2023 [Doc. Nos. 57, 58].

Fourth, Defendants argue that the hours Plaintiff's counsel recorded in connection with depositions "exceed[ed] the amount of time the deposition transcripts reflect depositions began and adjourned."[41] The Court does not understand this argument. If Defendants are suggesting that the number of hours counsel bills for depositions may not exceed the timeframe during which a deposition is actually conducted, that contention is untethered from the realities of legal practice. Mr. Malone's time entries on the days that depositions were conducted include references to "prep[aration]."[42] Defendants' objection is rejected. For the same reason, the Court overrules Defendants' objection to Plaintiff's counsel's billed hours for "Trial" which exceed the actual length of the trial proceedings on those dates.

Fifth, Defendants identify what appear to be erroneous (or at least facially excessive) entries in Plaintiff's counsel's timesheets. The Court has carefully reviewed those entries—as it has for all other entries in Plaintiff's submission—and it agrees that some must be reduced or altogether excluded. On August 15, 2023, Plaintiff's counsel recorded 0.5 hours, with the description "TC status conference w/Judge Rufe re postponement."[43] Although the Court entered an Order that day formally rescheduling the trial, that was not the date of the proceeding with the Court.[44] The entry must be excluded. On January 24, 2024, Plaintiff's counsel recorded 13.5 hours for "Trial."[45] The last day of trial was January 23, 2024, and the Court is unaware of any post-trial filings or other work for which Plaintiff's counsel was responsible on January 24. That entry will also be excluded.

---

[41] Def.'s Resp. Opp'n at 16 [Doc. No. 115].

[42] Malone Decl., Ex. A [Doc. No. 100-2].

[43] *Id.*

[44] Order, Aug. 15, 2023 [Doc. No. 46].

[45] Malone Decl., Ex. A [Doc. No. 100-2].

Finally, Plaintiff's counsel recorded 16 hours for "Trial" on January 19, 2024.[46] There were no trial proceedings held that day due to inclement weather, but the Court held a charge conference with the parties by telephone that afternoon.[47] Even apart from the time reasonably needed to prepare for and attend the charge conference, it is not unreasonable or uncommon for counsel to continue trial work on days with no in-court proceedings. Only a partial reduction is warranted for that entry. The Court, in its discretion, will reduce the January 19, 2024 entry by half, from 16 hours to 8 hours. Defendants separately object to the 7.5 hours of work that Mr. McInerney recorded on the January 19 snow day for "Trial support; jury instruction research."[48] Because it is reasonable for Mr. Malone to be paid for 8 hours of work on that date, the Court holds that Mr. McInerney's 7.5 hours are reasonable, particularly given that his work included jury instruction research relevant to the charge conference held by telephone in the afternoon of January 19 for 2.5 hours.[49]

### 3. Multiplication of Hourly Rate and Hours Expended

Applying the above modifications, the Court reduces Mr. Malone's total hours expended before and during the trial from 385.25 to 363.25, for a total reduction of 22 hours. Multiplying those adjusted hours by Mr. Malone's reasonable hourly rate of $725 yields an attorney's fee amount of $263,356.25. Multiplying Mr. McInerney's unchallenged hourly rate of $125 by his recorded hours of 123.5 yields $15,437.50. Lastly, and as previously stated, Defendants do not object to the $8,941.47 in costs and expenses reflected in Plaintiff's submission.[50]

---

[46] *Id.*

[47] *See* Min. Entry, Jan. 19, 2024 [Doc. No. 80].

[48] Malone Decl., Ex. B [Doc. No. 100-2].

[49] Min. Entry, Jan. 19, 2024 [Doc. No. 80].

[50] *Id.*, Ex. C.

## B. Post-Lodestar Adjustments Regarding Prevailing-Party Status

Despite Plaintiff's success on each and every one of the federal and state claims that were tried before the jury, Defendants argue that Plaintiff was not the prevailing party with respect to certain claims that were dismissed or withdrawn before trial. On February 19, 2020, the Court granted the City of Philadelphia's motion to dismiss the claims against it.[51] On December 21, 2023, three weeks before trial commenced, Plaintiff agreed to withdraw state-law claims of false light against all Defendants and all claims against Defendant Philadelphia Police Corporal Kelly Keenan.[52] On January 8, 2024, the Court dismissed all claims against the Philadelphia Police Department ("PPD"), explaining that the PPD had never been an active party in this case and the dismissal was consistent with the Court's previous adjudication of Plaintiff's claims against the City.[53] Finally, during a charge conference on January 19, 2024, Plaintiff's counsel withdrew the retaliation claim against Detective Koenig and clarified that excessive force and assault and battery claims were being asserted only against Officer Hawkins, not Detective Koenig.[54]

With the exception of Plaintiff's unsuccessful *Monell* claim against the City, which was dismissed before any discovery or trial preparation was conducted in this case,[55] all of the above claims arose from a common core of facts and involved related legal theories. Defendants argue

---

[51] Order, Feb. 19, 2020 [Doc. No. 5].

[52] Joint Statement at ECF pg. 52 [Doc. No. 108]. On December 28, 2023, a Stipulation and Order was entered reflecting those withdrawals. Stipulation and Order, Dec. 28, 2023 [Doc. No. 69].

[53] Order, Jan. 8, 2024 [Doc. No. 70] (citing *Johnson v. City of Erie*, 834 F. Supp. 873, 878–79 (W.D. Pa. 1993)).

[54] Due to inclement weather, there were no trial proceedings held on January 19, 2024.

[55] Although the PPD was dismissed as a Defendant closer to the trial date, no counsel ever entered an appearance on its behalf, and nothing in the record suggests that Plaintiff spent time developing a standalone claim against it. During the final pretrial conference, the Court noted that the PPD had never been an active party. Final Pretrial Conf. Tr., Dec. 21, 2023, at 53–54 [Doc. No. 91]. Neither Plaintiff nor Defendants objected to its dismissal. *Id.*

that Plaintiff did not "prevail" on those claims, and therefore her counsel should not recover fees for time expended on pursuing them.[56]

In *Hensley v. Eckerhart*, the Supreme Court held that the degree of success is "the most critical factor" in determining an appropriate fee award.[57] If a plaintiff achieves "excellent results," her attorney should be awarded a fully compensatory fee, which normally encompasses "all hours reasonably expended on the litigation . . . ."[58] Where, as here, a civil rights case presents multiple claims for relief involving "a common core of facts or . . . related legal theories," it is difficult and unnecessary to scrutinize an attorney's hours on a claim-by-claim basis.[59] Rather, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."[60] As established by the Supreme Court over four decades ago, "[t]he result is what matters."[61] The Third Circuit case upon which Defendants rely, *Lanni v. New Jersey*, instructs that "fees shall not be awarded for time that *would not have been spent* had the unsuccessful claims not been pursued."[62] However, Plaintiff's counsel's work developing the claims that were not tried necessarily overlapped with his work on the claims that were tried. All arose from the same universe of facts—specifically, the assault, arrest, and malicious prosecution of and retaliation against Mrs. Wexler on June 9, 2019. Again, excluding the *Monell* claim that was dismissed at the very

---

[56] Def.'s Resp. Opp'n at 9–13 [Doc. No. 115].

[57] *Hensley*, 461 U.S. at 434–36.

[58] *Id.* at 435.

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] Def.'s Resp. Opp'n at 9 [Doc. No. 115] (quoting *Lanni v. New Jersey*, 259 F.3d 146, 151 (3d Cir. 2001)) (emphasis added).

11

outset of the case, none of the withdrawn claims involved distinct theories of liability such that the work performed on them became extraneous upon their withdrawal.[63]

As relevant specifically to the voluntarily dismissal of the claims against Corporal Keenan, the Third Circuit has held that "attorney hours 'fairly devoted' to one defendant that also supports the claims against other defendants are compensable."[64] That reasoning applies here, where there is no reason to conclude that Plaintiff's counsel could have, for example, avoided the deposition of Corporal Keenan as part of developing the claims against Detective Koenig and Officer Hawkins.[65] Similarly, Defendants' argument that § 1988(b) does not provide for the recovery of attorney's fees for state-law claims also fails, as there are no grounds here to distinguish between the hours Plaintiff's counsel spent litigating, for example, the state-law malicious prosecution claims and the federal malicious prosecution claims under § 1983.

In this case, the Court will not apply a downward adjustment for voluntarily withdrawn claims when they arose from the same facts and required the same work that counsel otherwise would have performed.[66] The fee award resulting from the Court's initial lodestar calculation is

---

[63] *Cf. Watcher v. Pottsville Area Emergency Med. Serv., Inc.*, 559 F. Supp. 2d 516, 529 (M.D. Pa. 2008) (applying targeted reductions where hostile work environment claims against a supervisor were withdrawn, and jury found liability only against employing entity for age discrimination).

[64] *Rode v. Dellarciprete*, 892 F.2d 1177, 1185 (3d Cir. 1990) (citation omitted).

[65] Plaintiff contends that all time pursuing the claims against Corporal Keenan were necessary because she was on Defendants' witness list. Pl.'s Pet. Att'y's Fees ¶ 4 [Doc. No. 100]. Defendants argue that, as a named party, Corporal Keenan was required to be listed as a defense witness before the claims against her were withdrawn, and that Defendants continued to make her available after the withdrawal solely at Plaintiff's request. Def.'s Resp. Opp'n at 12 [Doc. No. 115]. The Court need not resolve the parties' dispute because, in either event, Corporal Keenan's signatures at the bottom of Officer Hawkins's incident reports—key evidence in support of Plaintiff's claims and her overarching theory of liability at trial—necessitated reasonable fact discovery into Corporal Keenan's involvement during discovery in this case. *See* Joint Exs. 1, 2 (Hawkins Complaint or Incident Reports); Koenig Test., Trial Tr. Jan. 18, 2024, at 54–55.

[66] The Court notes that Defendants did not file motions to dismiss or for summary judgment before trial.

presumptively sufficient,[67] and there are no "rare circumstances" here which warrant a reduction.[68]

### C. Legal Services for Fee Petition Litigation

Defendants object to Plaintiff's counsel's request for fees in connection with his preparation of the instant petition. This Court must separately analyze each request for fees.[69] The Third Circuit has instructed that fee petition litigation is "a separate entity subject to lodestar and *Hensley* reduction analysis,"[70] meaning this Court must conduct a separate lodestar calculation for legal services in the present fee dispute.[71] In order to determine a reasonable hourly rate, courts are instructed to "consider whether these services require the same quality of expertise and skill as the underlying dispute."[72] Then, the Court is required to "separately consider what adjustments, if any, should be made . . . ."[73] Mr. Malone represents that he expended 14 hours in preparing the instant petition for fees.[74] Defendants argue that 14 hours is unreasonable, noting that Plaintiff's memorandum of law in support of the petition is three pages long and cites only three cases.[75]

Given the expertise required to summarize the complex procedural history and factual background of this case in support of his fee arguments under Supreme Court and Third Circuit

---

[67] *Perdue*, 559 U.S. at 552.

[68] *Souryavong*, 872 F.3d at 128 (quoting *Perdue*, 559 U.S. at 553).

[69] *Windall*, 51 F.3d at 1190.

[70] *Black Grievance Comm. v. Phila. Elec. Co.*, 802 F.2d 648, 657 (3d Cir. 1986) (quoting *Institutionalized Juvs. v. Sec'y of Pub. Welfare*, 758 F.2d 897, 924 (3d Cir. 1985)), *vacated on other grounds*, 483 U.S. 1015 (1987).

[71] *Windall*, 51 F.3d at 1190.

[72] *Id.*

[73] *Id.*

[74] Pl.'s Pet. Fees ¶ 6 [Doc. No. 100]; Pl.'s Pet. Fees, Ex. A [Doc. No. 100-2].

[75] Def.'s Resp. Opp'n at 17–18 [Doc. No. 115]; Pl.'s Mem. Law Supp. Pet. [Doc. No. 100-1].

precedent, Mr. Malone's hourly rate of $725 remains reasonable in the context of his work on the fee petition. However, the Court agrees that 14 hours is excessive. The Court has held that 16.5 hours was a reasonable amount of time for counsel to draft a ten-count Complaint and to take the other investigative steps necessary to initiate this case. The present petition, by contrast, does not reflect a level of complexity that would justify billing close to the same number of hours. The Court, in its discretion, will apply a 50% reduction, from 14 hours to 7 hours. Multiplying Mr. Malone's hourly rate of $725 by 7 hours yields a separate fee award totaling $5,075 for his work on the petition.

### III. Conclusion

For the reasons stated herein, Plaintiff's Petition for Attorney's Fees will be granted as adjusted. The Court will award $263,356.26 in reasonable fees for attorney work conducted before and during trial, $5,075 in reasonable attorney's fees for work on the present petition, $15,437.50 for paralegal services, and $8,941.47 in reasonable costs and expenses, for a total award of $292,810.23. An order will be entered.