**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **TZVIA WEXLER,**<br>**Plaintiff,**<br>**v.**<br>**CHARMAINE HAWKINS and JAMES KOENIG,**<br>**Defendants.** | **CIVIL ACTION NO. 19-5760** |

**MEMORANDUM OPINION**

**Rufe, J.** **November 17, 2026**

Plaintiff Tzvia Wexler has filed a renewed petition for attorney's fees and costs. In response, Defendants Charmaine Hawkins and James Koenig[1] argue for a significantly lower award. For the reasons set forth herein, the Court will award fees and costs in the amount of $199,960.22.

## I. BACKGROUND

On January 23, 2024, a jury found Philadelphia Police Officer Charmaine Hawkins and Detective James Koenig liable, under 42 U.S.C. § 1983 and Pennsylvania state law, for false arrest, malicious prosecution, and retaliation, and further found Officer Hawkins liable for assault and battery under Pennsylvania state law and excessive force under § 1983.[2] The jury awarded Plaintiff Tzvia Wexler $4,000 in compensatory damages and $500,000 in punitive damages against Officer Hawkins and $2,000 in compensatory damages and $500,000 in

[1] Defendants' briefing indicates that both "Defendants, Charmaine Hawkins and James Koenig, oppose Plaintiff's renewed petition for attorneys' fees and costs." Defs.' Resp. Opp'n Pl.'s Renewed Pet. Att'y's Fees ("Defs.' Resp.") 1 [Doc. No. 132]. Therefore, this Opinion refers to the arguments opposing Plaintiff's petition as being made by both trial Defendants rather than just Defendant Hawkins. However, the Court notes that the Third Circuit granted Defendant Koenig judgment as a matter of law on each of Plaintiff's claims, *Wexler v. Hawkins*, 173 F.4th 478, 490 (3d Cir. 2026), this Court thereafter entered judgment in his favor, 06/25/2026 Am. Civil J. Order [Doc. No. 129], and, therefore, he is no longer an active party in this attorney's fees matter.

[2] Verdict Form 1–4 [Doc. No. 84]; Civil J. [Doc. No. 87].

punitive damages against Detective Koenig.[3] Defendants then moved for judgment as a matter of law, a new trial, and/or remittitur of the verdict.[4] The Court remitted the jury's punitive damages awards to $250,000 against each Defendant but otherwise denied Defendants' requested post-trial relief.[5] Thereafter, Plaintiff filed a petition for attorney's fees and costs, which the Court granted, with adjustments, in the amount of $292,810.23.[6]

The parties appealed, with Detective Koenig arguing he was entitled to judgment as a matter of law, Officer Hawkins and Plaintiff cross-appealing the remitted $250,000 punitive damages award against Officer Hawkins, and both Defendants appealing the attorney's fees order.[7] The Third Circuit Court of Appeals reversed the judgment against Detective Koenig, holding that he was entitled to judgment as a matter of law.[8] The court also reduced the punitive damages award against Officer Hawkins to $12,000.[9] Finally, the Third Circuit vacated the attorney's fees award and remanded the matter to this Court for reconsideration.[10]

## II. LEGAL STANDARD

While "[t]he general rule in our legal system is that each party must pay its own attorney's fees and expenses,"[11] 42 U.S.C. § 1988 enables the "prevailing party" in certain civil rights cases, including actions brought under § 1983, to recover "a reasonable attorney's fee as

---

[3] Verdict Form 4–5.

[4] Defs.' Mot. Post-Trial Relief, Alternatively Seeking New Trial Due to Prejudicial Error, Entry J. Matter L., and/or Remittitur Verdict [Doc. No. 102].

[5] 06/21/2024 Mem. Op. [Doc. No. 108]; 06/21/2024 Order on Defs.' Mot. Post-Trial Relief [Doc. No. 109]; 06/21/2024 Am. Civil J. Order [Doc. No. 110].

[6] 07/25/2024 Mem. Op. [Doc. No. 119]; 07/25/2024 Order [Doc. No. 120].

[7] *Wexler*, 173 F.4th at 480, 482.

[8] *Id.* at 490.

[9] *Id.*

[10] *Id.*

[11] *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010).

part of the costs."[12] Congress established § 1988's fee-shifting system "to ensure 'effective access to the judicial process' for persons with civil rights grievances."[13] Plaintiffs are considered "prevailing parties" under § 1988, thereby entitling them to a reasonable attorney's fee, "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."[14]

Upon finding that a plaintiff is a "prevailing party," the court begins the process of determining the reasonable fee amount by calculating the "lodestar"—the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."[15] In determining the lodestar, courts must also "reduce the hours claimed by the number of hours spent litigating claims on which the party did not succeed, that were distinct from the claims on which the party did succeed, and for which the fee petition inadequately documents the hours claimed."[16] "Once calculated, the lodestar carries a strong presumption of reasonableness and includes most, if not all, of the relevant factors constituting a reasonable attorney's fee."[17] The resulting reasonable fee should be an amount "that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case."[18]

---

[12] 42 U.S.C. § 1988.

[13] *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting H.R. Rep. No. 94-1558, at 1 (1976)).

[14] *Id.* at 433 (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir. 1978)).

[15] *McKenna v. City of Philadelphia*, 582 F.3d 447, 455 (3d Cir. 2009) (quoting *Hensley*, 461 U.S. at 433).

[16] *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001).

[17] *Augustyn v. Wall Twp. Bd. of Educ.*, 139 F.4th 252, 259–60 (3d Cir. 2025) (citation modified) (quoting *Souryavong v. Lackawanna Cnty.*, 872 F.3d 122, 128 (3d Cir. 2017)).

[18] *Perdue*, 559 U.S. at 552.

However, the product of the lodestar calculation "does not end the inquiry."[19] Other considerations may lead the court "to adjust the fee upward or downward."[20] Such considerations include "the important factor of the 'results obtained,'" which "is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief."[21]

In cases where a plaintiff's lawsuit includes several distinct claims "based on different facts and legal theories . . . no fee may be awarded for services on [an] unsuccessful claim."[22] But where a plaintiff's claims "involve a common core of facts" or are "based on related legal theories," the "lawsuit cannot be viewed as a series of discrete claims."[23] In such cases, courts may not utilize "a mathematical approach" to compare the number of issues on which the plaintiff prevailed with the total number of issues in the case.[24] Instead, courts "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."[25] Moreover, the lodestar amount may be excessive in cases where "a plaintiff has achieved only partial or limited success."[26] That may be so "even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith."[27] Specifically, a lodestar reduction is appropriate if the relief a plaintiff obtains "is limited in comparison to the

---

[19] *Hensley*, 461 U.S. at 434.

[20] *Id.*

[21] *Id.*

[22] *Id.* at 434–35.

[23] *Id.* at 435.

[24] *Id.* at 435 n.11; *see also Pub. Int. Rsch. Grp. of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1190 (3d Cir. 1995) ("A simple, mechanistic reduction based solely on the ratio of successful to unsuccessful issues is, however, precluded . . . .").

[25] *Hensley*, 461 U.S. at 435.

[26] *Id.* at 436.

[27] *Id.* The decisive factor remains "the degree of success obtained." *Id.*

scope of the litigation as a whole."[28] Ultimately, the court retains "discretion in making this equitable judgment."[29]

## III. Discussion

Plaintiff was represented at trial by Thomas Malone of the Malone Firm. As he did after the trial,[30] Mr. Malone has submitted a sworn declaration attesting to the reasonableness of the legal services he provided.[31] The declaration includes timesheets reflecting the work Mr. Malone and his paralegal, Chris McInerney, performed in this case.[32] The renewed petition and declaration accept the downward adjustments the Court made to the original petition.[33] Plaintiff also suggests removing half of the hours spent on the deposition of Detective Koenig "since arguably some portion of Defendant Koenig's deposition was dedicated solely to his liability."[34] Further, Plaintiff reports that Mr. Malone spent seven hours preparing the original fee petition, a number the Court has previously approved and Defendants do not oppose.[35] In addition, Plaintiff calculates a total of $8,941.47 in costs and expenses incurred, to which Defendants have no

---

[28] *Id.* at 440; *see also Farrar v. Hobby*, 506 U.S. 103, 114 (1992) ("Where recovery of private damages is the purpose of . . . civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." (quoting *Riverside v. Rivera*, 477 U.S. 561, 585 (1986) (Powell, J., concurring in judgment))).

[29] *Hensley*, 461 U.S. at 437.

[30] First Malone Decl. [Doc. No. 100-2].

[31] Second Malone Decl. [Doc. No. 131].

[32] *Id.* Ex. A (Malone timesheet); *id.* Ex. B (McInerney timesheet).

[33] *See id.* ¶ 3; Pl.'s Renewed Pet. Att'y's Fees ("Pet.") ¶ 7 [Doc. No. 130].

[34] Pet. ¶ 10.

[35] *Id.* ¶ 11; 07/25/2024 Mem. Op. 14; Defs.' Resp. 10.

objection.[36] In total, Plaintiff requests $290,439.32 in attorney's fees and costs.[37] Defendants argue for significant downward adjustments and request a total award of $48,888.35.[38]

### A. Lodestar Calculation

The determination of reasonable attorney's fees and costs begins with a calculation of the lodestar.[39] To calculate the lodestar, courts must consider the reasonable hourly rate, which "is calculated according to the prevailing market rates in the relevant community."[40] Specifically, the court must "assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."[41] Courts may also consider an attorney's "usual billing rate, but this is not dispositive."[42] The fee schedule established by Community Legal Services, Inc. ("CLS") "has been approvingly cited by the Third Circuit as being well developed and has been found by the Eastern District of Pennsylvania to be a fair reflection of the prevailing market rates in Philadelphia."[43]

Plaintiff remains the prevailing party with respect to her claims against Officer Hawkins. Therefore, Plaintiff's attorney, Mr. Malone, is entitled to reasonable attorney's fees and costs.[44] Mr. Malone attests that his hourly rate is $725 per hour and that he has practiced law for

---

[36] Pet. ¶ 11; Defs.' Resp. 15.

[37] Pet. ¶ 11.

[38] Defs.' Resp. 1.

[39] *McKenna*, 582 F.3d at 455.

[40] *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001).

[41] *Id.* (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)).

[42] *Windall*, 51 F.3d at 1185.

[43] *Maldonado*, 256 F.3d at 187 (citation modified) (quoting *Rainey v. Philadelphia Housing Auth.*, 832 F. Supp. 127, 129 (E.D. Pa. 1993)).

[44] 42 U.S.C. § 1988.

approximately thirty years.[45] The CLS fee schedule, effective January 19, 2023, lists the range of hourly rates for attorneys with more than twenty-five years of experience as $735–850.[46] The Court has previously held that Mr. Malone's hourly rate is reasonable based on the CLS schedule.[47]

Nevertheless, Defendants again dispute the reasonableness of this hourly rate, largely repeating the arguments they made in their opposition to the original petition, which the Court has already rejected.[48] Now, however, Defendants also cite the Third Circuit's negative discussion of some of Mr. Malone's statements at trial to assert that "Mr. Malone cannot reasonably situate himself among attorneys with more than 25 years of experience in civil rights cases."[49] But none of Mr. Malone's statements at trial erase or reduce his thirty years of legal experience. Therefore, the Court again holds that Mr. Malone's hourly rate is reasonable. With respect to Mr. McInerney, Defendants do not challenge his hourly rate of $125 per hour,[50] and the Court holds that this rate is reasonable as well.

Multiplying the 360.25 hours Plaintiff claims Mr. Malone reasonably expended before and during the trial by his reasonable hourly rate of $725 yields an initial attorney's fee amount of $261,181.25. Multiplying the 123.5 hours Plaintiff claims Mr. McInerney reasonably expended by his reasonable hourly rate of $125 yields an initial paralegal services fee amount of $15,437.50. Adding these two amounts together yields an initial lodestar of $276,618.75.

---

[45] *See* Second Malone Decl. ¶¶ 10–11.

[46] *Attorney Fees*, Cmty. Legal Servs. of Philadelphia (Jan. 19, 2023), https://clsphila.org/about-community-legal-services/attorney-fees.

[47] 07/25/2024 Mem. Op. 4.

[48] Defs.' Resp. 15–19; *see* Defs.' Mem. L. Opp'n Pl.'s Pet. Att'y's Fees 19–25 [Doc. No. 115]; 07/25/2024 Mem. Op. 4–5.

[49] Defs.' Resp. 19.

[50] *Id.* at 15.

### B. Downward Adjustment

Defendants contend that the lodestar must be reduced because of Plaintiff's unsuccessful claims against Detective Koenig and her limited success overall, including her lowered punitive damages award.[51] Conversely, Plaintiff maintains that the lodestar should not be decreased because even though her punitive damages award was lowered due to constitutional limitations, she remained successful in her claims against Officer Hawkins, with which her unsuccessful claims against Detective Koenig were inextricably intertwined.[52]

1. Claim-by-Claim Division

Plaintiff asserts, and Defendants concede, that Plaintiff's claims against Detective Koenig and Officer Hawkins involved a common core of facts and related legal theories, such that a claim-by-claim division would be impossible.[53] The Court agrees with the parties that no claim-by-claim division is possible in this case. The claims arose from the same incident, and a significant amount of the legal work Mr. Malone conducted applied to the claims against both Defendants.[54]

2. Significance of Relief Obtained

The attorney's fee analysis does not end merely because Plaintiff's successful and unsuccessful claims were intertwined. In an interconnected case such as this one, while an arbitrary mathematical approach is inappropriate, courts still can—and indeed must—assess "the

---

[51] *Id.* at 8–15.

[52] Pl.'s Suppl. Mem. L. Supp. Pet. Att'y's Fees ("Pl.'s Mem. L.") 5–6 [Doc. No. 130-1].

[53] *Id.* at 3–5; Defs.' Resp. 8.

[54] *See* Pl.'s Mem. L. 3–5.

significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."[55]

### a. *Reduced Punitive Damages Award Against Officer Hawkins*

Defendants argue that the lodestar should be reduced based on an assessment of Plaintiff's relief obtained because the Third Circuit significantly lowered Plaintiff's punitive damages award.[56] The Court disagrees. As Plaintiff emphasizes, "Plaintiff's counsel was not permitted to request a certain monetary figure for punitive damages. The jury was tasked with coming up with that number on their own."[57] The jury determined that a significant punitive damages award was appropriate.[58] While the Third Circuit reduced the remaining punitive damages award against Officer Hawkins, the court did so as a matter of constitutional due process, decreasing the award to "the constitutional *ceiling* on these facts."[59] In other words, the punitive damages award approved by the Third Circuit was the *highest* constitutionally permissible amount that could be obtained based on the facts of this case. That is far from an unsuccessful result or insignificant relief, even though it meant that the jury's initial punitive damages award had to be lowered pursuant to constitutional limits. Moreover, a court may not diminish attorney's fees merely "to maintain some ratio between the fees and the damages awarded," especially where, as here, a damages award is decreased based simply on a constitutional cap.[60] Therefore, the Court will not reduce the lodestar due to the lowered punitive damages award against Officer Hawkins.

---

[55] *Hensley*, 461 U.S. at 435.

[56] Defs.' Resp. 9–10.

[57] Pl.'s Mem. L. 5–6.

[58] *See* Verdict Form 5.

[59] *Wexler*, 173 F.4th at 490 (emphasis added).

[60] *Washington v. Philadelphia Cnty. Ct. of Common Pleas*, 89 F.3d 1031, 1041 (3d Cir. 1996).

b. *Dismissal of Claims Against Detective Koenig*

However, the Third Circuit also granted Detective Koenig judgment as a matter of law on each of Plaintiff's claims against him, eliminating the compensatory and punitive damages awards against him in their entirety.[61] Even where, as here, "the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith," the court must still assess "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."[62]

Based on the significance, or lack thereof, of the relief Plaintiff obtained, Defendants propose a fifty percent reduction to the lodestar.[63] Yet, this proposal—seemingly based on the failure of Plaintiff's claims against one of the two trial Defendants—is precisely the kind of mechanistic, mathematical approach that the law proscribes.[64] Instead, where, as here, a plaintiff's claims were interrelated and the plaintiff was only partially successful, "the district court may choose to reduce the award if a full compensatory fee would be unreasonable in consideration of the degree of success obtained."[65] Ultimately, "[h]ow to measure the degree of success is left to the district court's discretion."[66]

In analyzing the significance of the overall relief obtained compared to the scope of the litigation as a whole, the Court will consider several factors. First, as Plaintiff asserts, she was successful—meaningfully vindicating her rights—in her claims against the "primary" defendant

---

[61] *Wexler*, 173 F.4th at 490.

[62] *Hensley*, 461 U.S. at 435–36.

[63] Defs.' Resp. 10.

[64] *Hensley*, 461 U.S. at 435 n.11; *Windall*, 51 F.3d at 1190.

[65] *Mancini v. Northampton Cnty.*, 836 F.3d 308, 321 (3d Cir. 2016) (quoting *Hensley*, 461 U.S. at 435–36).

[66] *Id.* (citing *Hensley*, 461 U.S. at 436–37).

in this case, Officer Hawkins.[67] As such, merely halving the lodestar would not reflect the significance of the relief Plaintiff obtained. Furthermore, it is true that a substantial portion of the work and time Mr. Malone spent investigating and litigating the claims against Detective Koenig applied to and was interrelated with the claims against Officer Hawkins.[68] However, the Court does not find that *all* the legal work Mr. Malone conducted with respect to Detective Koenig was entirely intertwined with the claims against Officer Hawkins. Moreover, the Court will not ignore the dismissal of all claims against one of the two trial Defendants, even if Detective Koenig was not the "primary" Defendant and the claims against the Defendants were interrelated.

In addition, the jury's initial compensatory damages awards with respect to each trial Defendant provide further data in assessing the results obtained. As noted, the Court must not "compar[e] the total number of issues in the case with those actually prevailed upon."[69] The Court also will not seek to establish a strict proportionality between the lodestar and the damages award.[70] However, comparing the two compensatory damages awards *to each other* is instructive in gleaning the significance, within the scope of the litigation as a whole, that the jury attributed to the claims against each trial Defendant.[71] In this case, prior to the appeal, the jury awarded

---

[67] Pl.'s Mem. L. 5; *see id.* at 4 ("Defendant Hawkins' violence and deception were the proxy and catalyst for this litigation. Her deception led to the criminal charges being filed against the true victim, Ms. Wexler."); *Wexler*, 173 F.4th at 481–82 (describing Officer Hawkins's use of force against Plaintiff and false statements about that use of force relative to Detective Koenig's reliance on those statements in recommending charges against Plaintiff).

[68] Pl.'s Mem. L. 3–5.

[69] *Hensley*, 461 U.S. at 435 n.11.

[70] *Washington*, 89 F.3d at 1041.

[71] The initial punitive damages awards are less instructive for purposes of comparison because, unlike the compensatory damages, the jury apportioned the overall punitive damages award equally between the two trial Defendants. Verdict Form 5. Furthermore, unlike the punitive damages awards, the compensatory damages awards reflected the jury's assessment of the relief necessary to remedy the specific "injury or harm that [Plaintiff] actually sustained that was proximately caused by Defendant(s)." *Id.* at 4.

$4,000 in compensatory damages against Officer Hawkins and $2,000 in compensatory damages against Detective Koenig. These awards further demonstrate that the relief Plaintiff obtained from her claims against Officer Hawkins was more significant than her claims against Detective Koenig. But these awards also show that Plaintiff's claims against Detective Koenig, and the relief she sought from him, were not without significance.

Because Plaintiff's claims against Officer Hawkins were more significant than her claims against Detective Koenig, a fifty percent cut to the lodestar based on the dismissal of the claims against Detective Koenig would be unreasonable. On the other hand, because the relief sought from Detective Koenig—and the hours expended by Mr. Malone in pursuit thereof—did have significance within the scope of the litigation, refusing to adjust the lodestar by almost anything at all would likewise be unreasonable. Instead, a middle path is appropriate—the Court will apply a one-third reduction to the hours reasonably spent on this litigation.[72] This reduction reflects the fact that, in comparison to the scope of the litigation, the results Plaintiff obtained were significant—greater than a mere half victory—but nonetheless partial.

3. Additional Downward Adjustment

Alongside their suggested fifty percent cut to the lodestar, Defendants request a further seventy-five percent reduction "[t]o account for Plaintiff's limited success." Defendants' request is duplicative and excessive and largely repeats the arguments they make in their request for a fifty percent cut. The degree of success or relief obtained by the plaintiff is already part of the analysis regarding whether a downward adjustment to the lodestar is necessary in a case like this one with interrelated claims. The Court's assessment of Plaintiff's degree of success in this case

[72] Because the Court makes this overall downward adjustment, the Court need not also remove—as Plaintiff suggests—three hours from the deposition of Detective Koenig.

is reflected in its one-third reduction to the lodestar. The Court will not apply an additional downward adjustment for the same reasons it has already done so.

### C. Calculation of Total Fees and Costs

Applying the above modifications, the Court reduces Mr. Malone's total hours expended before and during the trial by one third, from 363.25 to 242.25. Multiplying those adjusted hours by Mr. Malone's reasonable hourly rate of $725 yields an attorney's fee amount of $175,631.25. The Court similarly reduces Mr. McInerney's total hours expended on the litigation by one third, from 123.5 to 82.5. Multiplying those adjusted hours by Mr. McInerney's unchallenged hourly rate of $125 yields $10,312.50. In addition, multiplying the unchallenged 7 hours Mr. Malone spent preparing the original fee petition by his hourly rate of $725 yields $5,075. Lastly, as previously noted, Defendants do not object to the $8,941.47 in costs and expenses reflected in Plaintiff's petition.[73]

## IV. Conclusion

For the reasons stated herein, Plaintiff's Renewed Petition for Attorney's Fees will be granted as adjusted. The Court will award $175,631.25 in reasonable fees for attorney work conducted before and during trial, $5,075 in reasonable fees for attorney work on the original fee petition, $10,312.50 for paralegal services, and $8,941.47 in reasonable costs and expenses, for a total award of $199,960.22. An order will be entered.

[73] Pet. ¶ 11; Defs.' Resp. 15.